[Crim. No. 1335.   Fourth Dist.   Jan. 28, 1958.]

## THE PEOPLE, Respondent, v. HOWARD RICHARD QUIGLEY, Appellant.

George R. McClenahan for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MUSSELL, J.—Appellant was charged with the crime of possession of narcotic in violation of Health and Safety Code, § 11500, in that on or about May 4, 1957, he wilfully, unlawfully and feloniously had in his possession a certain narcotic, to wit, marijuana. A prior conviction of a felony by the defendant was admitted. He was found guilty by a jury and was sentenced to the state prison for the term prescribed by law. His motion for new trial was denied and he appeals from the judgment of conviction and the order denying his motion for a new trial.

On May 4, 1957, at approximately 9:40 p. m., two police officers, Mueller and Sgobba, while driving on 39th Street in San Diego, noticed a 1949 Mercury automobile parked immediately behind a Nash car and near a residence which they were checking. The officers drove by the parked cars, made a "U" turn, and stopped at the side of the Mercury. Appellant and one David Rowell were sitting in the front seat of the Mercury and each had a can of beer in his hand. They appeared to be young men and the officers questioned them as to their ages. Rowell, the driver of the Mercury, and appellant, produced "identification" showing them to be 18 and 20 years old. At about this time the occupant of the residence the officers were checking left his house and started walking toward the Nash automobile. The officers flashed a light on him and went over to talk to him, after instructing the appellant and Rowell to remain in the Mercury until they

returned. When the officers returned to the Mercury, they asked the appellant if he was driving a car. He stated he did not have a car with him but had arrived there with Rowell. When the officers told appellant they knew the Nash parked in front of the Mercury belonged to him, he admitted that it did, and stated that he did not have a registration in it and for that reason had made the statement he did not have a car with him. The officers asked appellant's permission to search the Nash and he told them to go ahead and look through it. Officer Sgobba found a package of white LaCroix cigarette paper in the glove compartment and a package of brown cigarette paper behind the dashboard on the driver's side of the Nash. Officer Mueller recovered seven marijuana seeds from the edge of the floor mat in the front seat area and beneath the left edge of this mat he found a small brown paper "roach," about three-eighths of an inch long.

A "roach" was defined by an officer who had been working with the narcotics detail for 10 years as "a term used by narcotic users to describe a marijuana cigarette that has been partially smoked. It could be half a cigarette or it could be a very minute particle." The officer testified in this connection that "roaches are wrapped inside a piece of cardboard matchbook cover with the roach in the outside end, the other end of the cardboard is placed in the smoker's mouth and he is able to smoke the last dregs of the marijuana this way; that by using the roaches in this manner, the smoker obtains all the benefit of his purchase, and destroys all evidence of his possession of marijuana."

Mueller showed this roach to the appellant and asked him how he explained it being in his car. Appellant replied, "A lot of fellows are in and out of my car; maybe it belongs to somebody else." Mueller then placed handcuffs on appellant and went back to continue his search of the car. He then found a small white paper roach, about one-half inch long, beneath the left edge of the front seat. When he showed this roach to appellant, he (appellant) said, "You might find a couple of small pieces in the car but you wont find any big cigarettes." Appellant asked to be taken to his home before being booked at the police station. Officer Sgobba went with him and, while in the house, asked appellant if it would be all right for him to look into his things in his room. Appellant stated it would be all right. In the bottom drawer of appellant's dresser the officer found two packages of cigarette paper, LaCroix brand, one package of white cigarette paper,

and some green vegetable matter in a large manila envelope. Sgobba showed the envelope to appellant and said, "This looks like marijuana dregs in the bottom of this envelope," to which appellant replied, "I had some in there at one time."

At the city jail, Officer Mueller removed all the debris from the pockets of appellant's trousers, sport coat and shirt. When asked when he had acquired the clothes he was wearing, appellant stated he had received the brown sport coat and pants April 25, 1956, when he was "released from the joint."

A microscopic examination and chemical analysis revealed that one of the roaches found in appellant's car contained more than 20 particles of marijuana and the other contained more than 30 such particles. The seeds obtained from the front floor mat were marijuana seeds. The debris from the sport coat contained more than 100 particles of marijuana and two marijuana seeds. The sport shirt debris contained three particles of marijuana. The debris from the trousers contained 20 particles of marijuana and the green vegetable matter found in appellant's room was found to contain more than 30 such particles.

Appellant first contends that the evidence was not sufficient to sustain the conviction in that it did not show knowledge on appellant's part of possession of marijuana. In *People* v. *Van Valkenburg,* 111 Cal.App.2d 337, 340 [244 P.2d 750], a judgment of conviction of unlawful possession of marijuana was affirmed and the court held that "While it is necessary, on a possession charge, to show knowledge on the part of the defendant (*People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433]), such possession need not be exclusive, and may be shown by circumstances as well as by direct evidence, and may be constructive as well as physical." In *People* v. *Vice,* 147 Cal.App.2d 269, 274 [305 P.2d 270], the court said: "In regard to the question of possession, the cases hold that the narcotics need not be found on the person of the defendant, it being sufficient if such articles are deposited in a place under the possession and control of the accused."

■ Appellant, when shown one of the roaches found in his car, said, "You might find a couple of small pieces in the car, but you wont find any big cigarettes." In a conversation with Officer Sgobba at the time of his arrest the appellant said, "Why can't a person use a little marijuana . . . if he is not harming anyone else, if he is just harming himself?" When Sgobba showed appellant the green vegetable matter found in his room and remarked that it looked like marijuana dregs, appellant replied, "I had some in it at one time." These

statements made by the appellant, together with evidence of the presence of marijuana in his clothes and his conflicting statements with the inferences reasonably to be drawn therefrom are sufficient to support a finding of unlawful possession of marijuana and knowledge on the part of the appellant of such possession.

Appellant argues that the deputy district attorney was guilty of prejudicial misconduct in his opening statement to the jury when he stated defendant was a minor and had been drinking beer when arrested. This argument is without merit. One of the police officers testified that the defendant had a can of beer in his hand when they stopped at the car where he was sitting. This evidence was admissible as one of the circumstances surrounding the arrest of the appellant and no prejudicial error resulted from the admission of this evidence or the statement of the deputy district attorney relative thereto.

It is claimed that prejudicial error resulted when Officer Mueller testified that when appellant was asked when he acquired his clothing, appellant replied that he had received the brown sport coat and brown pants April 25, 1956, ''when he was released from the joint.'' Appellant's counsel objected to the quoted portion of the answer, assigned it as misconduct, and asked for a mistrial. The matter was discussed in the court's chambers and the quoted portion of the answer was not stricken from the record. Appellant having admitted the prior conviction alleged in the information, it was improper to refer to it in the presence of the jury. In his closing argument, the deputy district attorney referred to the criticized language. Under the circumstances shown by the record, the criticized portion of the answer should have been stricken from the record and the jury instructed to disregard it.

Appellant contends that the court erred in admitting the testimony of Officer Wilson as to the definition of ''roaches'' and their use. However, we find no prejudicial error in admitting this evidence and its weight was a matter for the jury to determine. (*People* v. *Salas,* 17 Cal.App.2d 75, 78 [61 P.2d 771].)

Finally, appellant contends that the deputy district attorney was guilty of prejudicial misconduct when he made the following statement in his closing argument to the jury:

''Now, Mr. McClenahan has said a lot about all of us being advocates, and the idea I think he's trying to get across is, there's only one thing we're interested in here, and that is

winning the case. Now, that's true of Mr. McClenahan; that's the only reason he's here, is to win the case, but he also said that to me, and he said that about the four police officers who have testified in this trial, so I think that it is only just to inform you that there are two purposes of the police department, and my office also. If we did that, we'd really be cheating the People who put us in office. The purposes are, one, you're supposed to protect the innocent, and if you're going to do that, *we cannot be prosecuting this man unless we thought he was guilty.* And the second function of our office—and this is the second function of the police department, too—is to prevent those who are guilty from escaping punishment.'' (Italics ours.)

Appellant cites *People* v. *Kirkes,* 39 Cal.2d 719, 723-724 [249 P.2d 1], in support of this contention. In that case [pp. 721-722] the deputy district attorney in his closing argument to the jury said:

'' 'As a member of the District Attorney's office of this County [for 19 consecutive years] I have taken an oath to prosecute cases to the best of my ability. If, during the conduct of this trial I have been—I have appeared to you to have been overly aggressive or tenacious, then I say to you that I was following out that oath, that in all sincerity I believe and still believe and knew prior to the time that I became associated in this particular prosecution in the month of October, that this particular Defendant was guilty of this particular offense. I would not have been associated with the prosecution of this particular case unless I had so believed.' ''

This language was held to constitute misconduct and the court said:

'' 'When the district attorney declared that he would not prosecute any man he did not believe to be guilty he thereby wrongfully placed his personal opinion of the guilt of the defendant in evidence in the case. He was privileged to argue to the jury that it was his opinion formed from deductions made from the evidence adduced at the trial that the defendant was guilty of the crime charged (*People* v. *Rogers,* 163 Cal. 476 [126 P. 143]; but his declaration to the jury that he would not prosecute any man whom he did not believe to be guilty was tantamount to an assertion that he believed in the guilt of the defendant at the very inception of the prosecution; and necessarily such belief must have been founded upon the result of the district attorney's original and independent investigation of the charge, and therefore in all likelihood was

based, in part at least, upon facts which did not appear and which perhaps could not have been shown in evidence.' "

In *People* v. *Beal*, 116 Cal.App.2d 475 [254 P.2d 100], in his closing argument to the jury, the district attorney stated that he had been a prosecutor for 20 years; that he was confident that he had never prosecuted an innocent man; and that ". . . 'There is lots of evidence that we are not permitted to bring before a jury. I would not, I am not obligated to, and I am forbidden to prosecute any man whom I have first not investigated on my own part and convinced myself of his guilt. The law says that I must give him the benefit of the doubt before I ask anybody to do it.' " The court there held that the argument of the district attorney was highly improper and constituted prejudicial misconduct, compelling a reversal of the judgment. (Citing *People* v. *Kirkes, supra.*)

In the instant case, the statement of the deputy district attorney that "we cannot be prosecuting this man unless we thought he was guilty" was tantamount to an assertion he believed the appellant to be guilty of the offense charged and that he would not be prosecuting the case if he did not so believe. It is quite possible, if not probable, that the harmful effect of this statement, and the remarks of the deputy district attorney with reference to appellant's statement that he had received his clothing "when he was released from the joint," influenced the jury in arriving at its verdict. While the evidence supports the verdict and judgment, the evidence of guilt is not overwhelming. A review of the entire record leads us to conclude that the misconduct of the deputy district attorney constituted reversible error under the rule announced in *People* v. *Kirkes* and *People* v. *Beal, supra.*

Judgment and order reversed and the cause remanded for a new trial.

Barnard, P. J., and Waite, J. pro tem.,* concurred.

A petition for a rehearing was denied February 20, 1958, and respondent's petition for a hearing by the Supreme Court was denied March 26, 1958.

---

*Assigned by Chairman of Judicial Council.